**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.:  09-20630-CV-HUCK/O'SULLIVAN**

XL INSURANCE AMERICA, INC., a
foreign corporation,

                    Plaintiff,

vs.

MARK ORTIZ, SCHRATTER FOODS,
INC., d/b/a CORMAN SHIP SUPPLIES, a
foreign corporation, and FLOYD MORE, a
Florida resident,

                    Defendants.
_____/

**ORDER GRANTING SUMMARY JUDGMENT**

This matter came before the Court on XL Insurance America, Inc.'s (the "Insurer")
Motion for Summary Judgment (D.E. #41) and Mark Ortiz's Motion for Summary Judgment
(D.E. #40).  The Court has reviewed the motions and associated responses, the record, and is
otherwise duly advised in the premises.  For the reasons set forth below, the Court determines
that the Insurer is entitled to summary judgment in its favor and against the insured, Schratter
Foods, Inc., and Ortiz, the judgment creditor and assignee of Alain Rodriguez's rights against the
Insurer.  Ortiz's motion is therefore denied.

    **I.**       **Factual and Procedural Background**

       **A.**       **The Insurance Policy**

This case is about the interpretation and application of the provisions of a commercial
general liability insurance contract to a workplace accident resulting in the injury of one of
Schratter Foods' employees.  As with all contractual matters, the launching point of the Court's
analysis is the text of the insurance contract it will interpret.

The Insurer issued a policy to Schratter Foods' parent corporation, Soparind Bongrain,
providing Commercial General Liability coverage to Schratter Foods subject to certain terms,
conditions, limitations, definitions, and exclusions.  The CGL policy in question is divided into

five sections and includes a series of endorsements that modify the terms of the coverage specified in the body of the policy.  For purposes of the parties' dispute, the relevant policy sections are Sections I, II, IV, and V.[1]  Section I of the policy describes the coverage offered under the policy.  The policy offers three types of coverage, two of which are at issue in this case.

Coverage A of the policy covers claims that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies.  Coverage B of the policy covers claims that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which the insurance applies.

Section II of the policy identifies who is eligible for coverage under Coverages A and B of the policy.  That section, in pertinent part, defines the insureds as Schratter Foods' employees,

    a.      . . . but only for acts within the scope of their employment by [Schratter Foods] or while performing duties related to the conduct of [Schratter Foods'] business.  However, none of these "employees" . . . are "insureds" for:

    (1)     "Bodily injury" or "personal and advertising injury":

        (a)     To . . . a co-"employee" while in the course of his or her employment or performing duties related to the conduct of [Schratter Foods'] business . . . .

Coverages A and B both contain certain exclusions.  Under those exclusions, the Insurer is not required to cover a claim, even if the policy would appear to apply to one of the insureds indentified in Section II of the policy.  One relevant exclusion that appears in Coverage A is the "Workers' Compensation and Similar Laws" exclusion.  Under that exclusion the policy does not cover "[a]ny obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law."  Another exclusion is known as the "Employer's Liability Exclusion."  That exclusion excludes coverage for bodily injury to

---

[1] Section V of the policy contains the definitions of terms used in the policy.  The parties also dispute whether Ortiz's injury constitutes "personal and advertising injury" which means injury, including "'bodily injury,' arising out of one or more of the following offenses:  a. False arrest, detention or imprisonment . . . ."  The Court's Order does not reach whether Ortiz's injury qualifies as "personal and advertising injury" because it determines that coverage is precluded for other reasons.

(1)    An "employee" of the insured arising out of and in the course of:

      (a)    Employment by the insured; or

      (b)    Performing duties related to the conduct of the insured's business; or . . . .

This exclusion applies:

(1)    Whether the insured may be liable as an employer or in any other capacity; and

(2)    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Section IV of the policy sets forth the conditions under which the insurance policy applies. One of those conditions—known as the "Duties in the Event of Occurrence, Offense, Claim or Suit" condition—requires the insured to notify the Insurer "as soon as practicable of an 'occurrence' or an offense which may result in a claim."[2]  And "[i]f a claim is made or 'suit' is

---

[2]    The "Duties in the Event of Occurrence, Offense, Claim or Suit" provision (otherwise referred to as the notice provision in this Order) is modified by a "Knowledge and Notice of Occurrence" endorsement to the policy, providing that "[k]nowledge of an 'occurrence,' claim or 'suit' by the agent, servant or employee of any insured shall not in itself constitute knowledge of the insured unless" the "Risk Manager" receives notice of the occurrence.  Schratter Foods contends that its "Risk Manager" did not receive notice of the occurrence.  However, Lewis Gitlin, who as Soparind Bongrain's general counsel is responsible for Schratter Foods' legal matters, testified in his deposition as follows:

Q.    And is there anyone at Schratter Foods who you would consider in charge of handling risks, like a risk manager?

A.    It depends in which area, but there is no risk manager per se at Schratter.

Q.    Okay.  And would your department be considered the one that would handle claims and risks for the company?

A.    Again, depending on exactly which area, but they would most likely consult me.

. . . .

Q.    Okay.  But with – with lawsuits, would those be brought to your attention?

A.    Typically.

brought against any insured," the insured must "[i]mmediately record the specifics" of the lawsuit and "[n]otify the Insurer as soon as practicable."  This obligation to notify the Insurer includes an obligation to supply certain information and cooperate in the Insurer's investigation of the claim.  Finally, the notice provision provides that "[n]o insured will, except at the insured's cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [the Insurer's] consent."

### B.        The Forklift Accident

At the center of this insurance coverage dispute is an accident that occurred at Schratter Foods' warehouse in Miami on April 14, 2005.  The accident involved Mark Ortiz and Alain Rodriguez, co-workers at Schratter Foods' warehouse.  While Ortiz and Rodriguez were working at the warehouse, four of Ortiz's fingers on his right hand were severed as he climbed off of a forklift.  The parties disagree, and there is contradicting evidence, on some facts surrounding the accident.

For example, Ortiz claims that working with pallet jacks and forklifts was within his normal scope of work.  (D.E. #41-9 at 13:22-25 – 14:1.)  His explanation of the accident is as follows:

> Q.      Can you explain to me what happened?
>
> A.       I had asked – I went to the back room and I had asked Alain [Rodriguez] if I could use the forklift.  Then he said sure.  I waited for him to finish.  As soon as he was done, he told me to jump on the forks to take him to his pallet job.[3]  Once we got there, he started lifting me up, put – you know, lifted the forks full range to the top and left me up there and went to the back room.  When he came out of the back room, there was – I guess he was getting other people.  When he came out of the back room, I was

(D.E. #49-2 at 63:10-24 – 64:1-17.)

With its opposition to the Insurer's motion for summary judgment, Schratter Foods submitted the affidavit of Michele Kulka, an employee of SB Alliance SNC which is a wholly-owned subsidiary of Soparind Bongrain.  Kulka claims that her "duties and responsibilities from at least 2005 to the present have involved managing the risk of SB Alliance, as well as the property insurance of Schratter Foods Incorporated."  She further states that she first became aware of the *Ortiz v. Rodriguez* lawsuit (described below) on or about April 6, 2009.  (D.E. #47-3.)

---

[3]        The employees worked in a large warehouse and frequently used the forklift as a means of transportation from one place to another.  *See* D.E. #41-9 at 65:17-25 – 66:1-12.

4

climbing down, he jumped on the forklift and started moving the forks down.

(*Id*. at 15:23-25 – 16:1-10.)  When Rodriguez began to lower the forks, Ortiz's fingers became entangled in the machinery, causing the amputation of four of his fingers.  Ortiz testified that he never knew that Rodriguez intended to lift him up on the forks, and if he had known that, he would not have gotten on the forks.  (*Id*. at 38:15-19.)

Rodriguez has a different version of the forklift accident.   Specifically, Rodriguez testified:

> Q.    Please describe for me what happened on April 14, 2005, with Mark Ortiz?
>
> . . . .
>
> A.    I was at the machinery using a double reacher when Mark tried to help me pick up a box.  And I lifted him up to the machine that was on top and he thought I was going to leave it up here.  He goes behind the machinery and when I look up I saw he was coming down from the back.
>
> And I start lower the machinery because I saw he was coming down and I heard him scream.  And I got scared when I heard him and I stop and I look up.
>
> He was standing on the roof.  Well, this is the kind of equipment you can – that you have to operate it standing.  And then when I look up I saw him standing on the roof and when he comes down to the floor I see his hand was hurt, his fingers were hurt.

(D.E. #41-12 at 17:2-21.)  Rodriguez reiterates that using the forklift for transportation was common practice.  (*Id*. at 24:1-10.)  Throughout his deposition, Rodriguez denies that he intended to play a prank on Ortiz when he lifted him in the air, although he acknowledges that other employees had played such pranks in the past.  (*Id*. at 52:24-25 - 53:1-11.)  At the conclusion of his deposition, Rodriguez testifies that, on the day of the accident, he had a conversation with Ortiz to create a story that would make Rodriguez seem less culpable because Rodriguez was scared that he would lose his job at Schratter Foods.  (*Id*. at 62:7-25 – 63:1-11.)

The accident reports prepared by a Schratter Foods employee have yet another version of the accident.  One states that Ortiz approached Rodriguez "to ask him to use the forklift for a minute" and while Ortiz spoke to Rodriguez, Ortiz rested his hand "on the hydraulic scissor part

of the extended fork" which was out of Rodriguez's view.  At some point, Rodriguez lowered the forks and heard Ortiz scream.  (D.E. #41-17.)  The same story is repeated in an accident report prepared on the forklift's lessor's form.  (D.E. #41-18.)

Whether the accident occurred as the result of Rodriguez's prank or in the course of the employees' ordinary scope of work is a disputed fact.  But the common thread in all of the stories is that Ortiz was engaged in his regular duties as a warehouse employee when the forklift accident occurred.[4]  The uncontroverted evidence presented to the Court is that Ortiz and Rodriguez were alone when the incident began.  Accordingly, no other witness is available to contradict Ortiz and Rodriguez's testimony that Ortiz was engaged in his normal job duties when the events leading to his injury commenced.

Officials at the warehouse were aware of the accident resulting in Ortiz's injury on the same day it occurred.  (D.E. #49-1 at 26:23-24 – 27:1-13.)  Schratter Foods' corporate affairs officer, Adeline Schlesinger, apparently prepared at least one of the above-mentioned accident reports on the day of the forklift accident.  The accident report that Schratter Foods submitted to the forklift's lessor is dated April 27, 2005.  (D.E. #41-18.)  Although the record is unclear as to when Schratter Foods' general counsel, Gitlin, first learned of the accident, Ortiz's attorney and Gitlin were in communication in March 2007, at the latest.  (D.E. #41-33.)  Gitlin testified that he never submitted the claim to the Insurer because, after reading the complaint in the *Ortiz v. Rodriguez* action, he determined that the policy did not cover the claim.[5]  (D.E. #49-1 at 49:9-18.)

---

[4]      Defendant Floyd More contends that Ortiz was engaged in horseplay when his fingers were accidentally amputated.  But from his deposition testimony, it is apparent that More's conclusion is based on his speculation on events that took place before he arrived at the scene of the accident.  Specifically, in his deposition, More stated:

> Q.      And is it correct that you said that you did not witness the incident from the beginning when Alain Rodriguez –
>
> . . . .
>
> A.      Yes, that's correct, I didn't witness it from the beginning, no.  (D.E. #47-2 at 28:23-25 – 29:16-17.)

[5]      A representative from Schratter Foods' insurance broker, AON Risk Corporation, which is responsible for reporting potential losses to the Insurer, testified that AON first learned of the *Ortiz v. Rodriguez* action in June 2008.  (D.E. #52-2 at 16:4-8, 17:6-13.)

After the accident, More transported Ortiz to the hospital to receive treatment for his injuries.  Ortiz remained hospitalized for approximately one month after the accident.  (D.E. #41-6.)  After treatment, doctors successfully re-attached three of Ortiz's four amputated fingers.  As of September 10, 2008, Ortiz had received $272,392.32 in workers' compensation benefits.  (*Id.*; D.E. #41-31.)

### C.    The First State-Court Action:  *Ortiz v. Rodriguez*

In July 2007, Ortiz filed an amended complaint[6] against Rodriguez (Schratter Foods was not a party to the lawsuit) asserting two bases for relief:  gross negligence (Count I) and horseplay (Count II).  (D.E. #41-3.)  That complaint generally alleges that Rodriguez acted intentionally and with reckless indifference (resulting in injury to Ortiz) when, in the course of playing a prank on Ortiz, Rodriguez lifted Ortiz approximately 30 feet in the air and refused to lower him to the ground upon request.

On May 18, 2007, Ortiz's counsel wrote to Gitlin offering to settle the case for $250,000.  (D.E. #41-35.)  After conveying that offer, Ortiz attempted to determine whether Schratter Foods had insurance that would cover damages that Ortiz suffered as a result of the forklift accident.  Ultimately, Gitlin responded that he had discussed Ortiz's request with Schratter Foods' insurance broker and they had determined that Schratter Foods' "public liability insurance would [not] provide coverage in the [*Ortiz v. Rodriguez* lawsuit]."  (D.E. #41-37.)  Accordingly, Schratter Foods did not tender the matter to the Insurer.  *Id.*

On December 11, 2007, Ortiz and Rodriguez entered into a settlement agreement.  (D.E. #41-38.)  Under this agreement, Rodriguez stipulated to a consent judgment against him and in Ortiz's favor for $6.125 million.  *Id.*  Ortiz agreed not to execute on the consent judgment against Rodriguez, and Rodriguez agreed to assign to Ortiz any claims that he might have against Schratter Foods or its insurers.  (*Id.*; D.E. #41-39.)  The state court entered its final judgment in *Ortiz v. Rodriguez* on December 19, 2007.  (D.E. #41-40.)

### D.    The Pending State-Court Action:  *Ortiz v. Schratter Foods, Inc. et al.*

On April 11, 2008, Ortiz filed another state-court action, this time suing Schratter Foods and Floyd More.  The initial (and amended complaint) contained a claim against More for

---

[6]    The Miami-Dade Circuit Court's docket indicates that the initial complaint was filed on May 18, 2006.

negligence.  But Ortiz eventually dropped that claim.  (D.E. #41-5.)  The current complaint—the second amended complaint—contains two counts against Schratter Foods:  breach of contract (Count I) and negligent misrepresentation (Count II).  (D.E. #42-10.)

The basis for Ortiz's breach-of-contract claim is that he was allegedly a third-party beneficiary of the lease agreement between Schratter Foods and the forklift's lessor, Crown Equipment Corporation.  That lease agreement contained a provision that required Schratter Foods to purchase insurance covering any bodily injury and property damage that might result from use of the forklift.  Ortiz alleges that this insurance would have covered Rodriguez, and that Schratter Foods' failure to secure that insurance breached an obligation it had to Rodriguez under the lease agreement.

In the negligent misrepresentation count, Ortiz alleges that Schratter Foods "failed to exercise reasonable care or competence in obtaining or communicating the information regarding the available liability insurance" when, on October 3, 2007, Gitlin advised Ortiz's counsel that there was no insurance coverage that would cover Ortiz's claims arising out of the forklift accident.  Ortiz alleges that Schratter Foods should have notified him that Schratter Foods was covered under primary and umbrella policies issued by the Insurer.

On November 21, 2008, the Insurer advised Schratter Foods that it would defend Schratter Foods in the *Ortiz v. Schratter Foods* action "subject to a full reservation of rights under the Policy."  (D.E. #41-4.)  In that letter, the Insurer advised Schratter Foods of several reasons that could exclude coverage under the applicable policy, many of which the Insurer has asserted in the context of this action for declaratory relief.  *Id.*  The Insurer also advised Schratter Foods that it reserved the right to file a declaratory judgment action, and could withdraw from Schratter Foods' defense "at any time and seek reimbursement of defense costs to the extent permitted by law if it is later determined that no coverage is owed under the Policy" for the *Ortiz v. Schratter Foods* lawsuit.

### E.    The Federal Declaratory Judgment Action

On March 11, 2009, the Insurer filed this action, a two-count complaint against Mark Ortiz, Schratter Foods, Inc., and Floyd More.  Both counts of the complaint seek a declaration of the Insurer's coverage obligations.

In Count I, the Insurer alleges that "it has no duty to defend and/or indemnify Schratter Foods" in the *Ortiz v. Schratter Foods* action because that lawsuit does not involve "bodily

injury" or "property damage" caused by an "occurrence," as those terms are defined in the relevant insurance agreement.   Specifically, the Insurer contends that it does not provide coverage for the underlying lawsuit because the lawsuit seeks damages that "are in the nature of economic damages for breach of contract for failing to obtain insurance."   Count I also lists several exclusions that purportedly exclude coverage under Coverage A.   The relevant exclusions for the purpose of the Insurer's summary judgment motion are the Employer's Liability Exclusion and the Workers' Compensation Exclusion.   Finally, the Insurer alleges that it has no coverage obligation because Schratter Foods did not timely notify the Insurer of the potential claim.

In Count II, the Insurer seeks a declaration that it has no duty to defend More in the underlying lawsuit.   More never answered the complaint, and Clerk of the Court entered a default against More on August 5, 2009.  (D.E. #29.)

Schratter Foods answered the Insurer's complaint without asserting any counterclaims. (D.E. #7.)   Ortiz answered and asserted a counterclaim seeking a declaratory judgment that Rodriguez, who assigned his rights under the Insurer's policy to Ortiz, was entitled to coverage for the agreed damages in the *Ortiz v. Rodriguez* action.   Ortiz seeks a judgment declaring that Rodriguez was an insured under the policy because he was performing duties related to the conduct of Schratter Foods' business, and coverage was due under Coverage B for "personal and advertising injury" because Ortiz suffered injury as a result of "false detention or imprisonment." (D.E. #25.)

### 1.      The Insurer's Motion for Summary Judgment

The Insurer argues that it is entitled to summary judgment against Schratter Foods for four reasons.  (D.E. #41.)

Through the *Ortiz v. Schratter Foods* action, Ortiz seeks recovery of the damages he has suffered because of Schratter Foods' failure to purchase a certain type of insurance required by the forklift rental agreement.   Ortiz's theory of recovery is that he was a third-party beneficiary of the forklift rental agreement and, if Schratter Foods had purchased the required insurance, an insurance policy would be available to him from which he could recover for the injuries he sustained in the forklift accident.   Accordingly, the Insurer's first argument for summary judgment in its favor is that the CGL policy that it issued to Schratter Foods does not cover damages arising out of the breach of a contractual obligation to an alleged third-party beneficiary

According to the Insurer, the policy in question only allows recovery for damages arising out of bodily injury or property damage, and Schratter Foods' breach of the forklift rental agreement fits neither of those categories.[7]

Second, the Insurer argues that the policy excludes coverage because the Ortiz's claim is covered by the workers' compensation laws, and the policy excludes coverage for "any obligation of the insured under a workers' compensation . . . law or any similar law."  The Insurer further argues that Ortiz was not engaged in horseplay when he was injured and, therefore, workers' compensation recovery is available to him.  Finally, the Insurer notes that Ortiz has, in fact, recovered $272,392.32 as a result of his claims for workers' compensation.

Third, the Insurer argues that the policy excludes coverage under the Employer's Liability Exclusion.  Under this exclusion, the terms of which are set forth above, the Insurer is not liable for injuries that occur to employees while they are performing duties related to the insured's business.

Fourth, the Insurer argues that Schratter Foods' failure to timely notify it of the *Ortiz v. Rodriguez* lawsuit precludes coverage.  The Insurer contends that Schratter Foods was obligated to notify the Insurer of the lawsuit as soon as practicable, but that Schratter Foods failed to meet this obligation when it waited three years before notifying the Insurer.  The Insurer argues that, under Florida law, the late notice raises the presumption of prejudice, and the Insurer was in fact prejudiced because if it had received timely notice of the forklift accident it could have resolved the claim for $250,000 instead of facing the $6.125 million exposure that it potentially faces in the *Ortiz v. Schratter Foods* lawsuit.

Accordingly, the Insurer argues that Ortiz is not entitled to coverage for several reasons: (1) he is not an insured under the policy, (2) certain exclusions in Coverage A preclude coverage of Ortiz's injuries, (3) Coverage B does not apply because Ortiz's injury was not "personal and advertising injury", and (4) Rodriguez did not timely notify the Insurer of the claim. Specifically, with respect to Coverage A, the Insurer argues that the Workers' Compensation Exclusion and Employer's Liability Exclusion foreclose coverage.  With respect to Coverage B,

---

[7]      The claims raised in the *Ortiz v. Schratter Foods* action are relevant to the Court's determination of whether the Insurer must defent Schratter Foods in that action.  *See* Section III.C.  The Court, however, does not and need not determine whether Ortiz was, in fact, a third-party beneficiary of the forklift rental agreement.

the Insurer's argument is based on the definition of "personal and advertising injury" which requires that the injury for which coverage is sought arises out of, among other things, "[f]alse arrest, detention or imprisonment."  In particular, the Insurer argues that complaint in the *Ortiz v. Rodriguez* action does not state a claim for "false arrest."[8]

### a.      Schratter Foods' Response

Schratter Foods contends that the Court should not grant summary judgment in the Insurer's favor for three reasons.  (D.E. #47.)

First, Schratter Foods argues that under Florida law before an insurer is relieved of its obligation to defend an insured in a lawsuit, the insurer must conclusively establish that the claim for which the insured seeks coverage is patently outside the policy's scope of coverage. Schratter Foods contends that, even though Ortiz seeks recovery in the *Ortiz v. Schratter Foods* action under a theory of breach of contract (which is not a covered claim), there is the "potential" for coverage because the breach-of-contract damages are the same as the bodily injury damages. Schratter Foods claims that by defending the underlying action under a reservation of rights, the Insurer has admitted that there is the potential of coverage.[9]

Second, Schratter Foods contends that there are disputed questions of fact as to the applicability of certain exclusions.  One disputed fact, according to Schratter Foods, is whether Ortiz was injured while he was acting within the course and scope of his employment.  Schratter Foods also argues that there is a dispute of material fact as to the applicability of the workers' compensation exclusion because the damages that Ortiz seeks to recover are distinct from those provided under workers' compensation.

Finally, Schratter Foods contends that its notice to the Insurer of the *Ortiz v. Rodriguez* lawsuit was timely.  Schratter Foods argues that the date on which Gitlin learned of the *Ortiz v.*

---

[8]      Because Ortiz concedes that the Insurer is entitled to summary judgment in its favor (*see* Section II.E.2) and the Court concludes that Rodriguez was not an insured under the policy (*see* Section III.A), the Court does not reach the issue of whether the *Ortiz v. Rodriguez* action stated a claim that falls within the parameters of Coverage B.

[9]      Schratter Foods also relies on the deposition of an employee of the Insurer, Brian Roper, to establish that the Insurer was not sure whether the policy covered the claims in the *Ortiz v. Schratter Foods* action.  The testimony is essentially that Roper sought the advice of counsel on coverage and that the Insurer does not agree to defend actions where it believes that there is no potential for coverage.  (D.E. #47-2.)

*Rodriguez* lawsuit is irrelevant because Gitlin is not its "Risk Manager."  Summary judgment is therefore inappropriate because the Insurer has not put forward any evidence establishing that Schratter Foods' risk manager knew of the *Ortiz v. Rodriguez* action before June 30, 2008. Instead, Schratter Foods argues, Kulka's affidavit states that she first learned of the *Ortiz v. Rodriguez* lawsuit on April 6, 2009.  And, even assuming that the Insurer was untimely notified of the *Ortiz v. Rodriguez* action, Schratter Foods argues that there is no evidence that the Insurer suffered any prejudice by the delayed notice.

### b.       Ortiz's Response

As its response to the Insurer's motion for summary judgment, Ortiz referenced the arguments contained in his cross-motion for summary judgment.  (D.E. #46.)

### 2.       Ortiz's Motion for Summary Judgment

In his motion for summary judgment (D.E. #40) Ortiz alleges that he is entitled to a declaration that the Insurer must cover the stipulated damages from the *Ortiz v. Rodriguez* action because Rodriguez was not acting in the scope of his employment when he injured Ortiz (because he was involved in horseplay) and, therefore, the Employer's Liability Exclusion does not preclude coverage of the claims that Ortiz brought against Rodriguez.  In addition, Ortiz argues that the allegations in the *Ortiz v. Rodriguez* complaint support a false imprisonment claim which is covered as "personal and advertising injury."

Ortiz states that his motion for summary judgment is "predicated and contingent upon rescission of the Settlement Agreement entered into between Ortiz and Rodriguez and the vacation of the Consent Judgment rendered pursuant to said Settlement."   In that vein, on September 9, 2009, Ortiz filed a new action in the state court seeking rescission of the Settlement Agreement and vacation of the Consent Judgment.  But Ortiz later notified the Court that he had dismissed the rescission action.  (D.E. #50.)

After dismissing the rescission action and reviewing the authorities cited in the Insurer's response (D.E. #45),[10] Ortiz "concedes that there is no impediment to a declaratory judgment on the coverage issue in favor of [the Insurer] as the coverage question pertains to *Ortiz v. Rodriguez*."  As such, Ortiz agrees that the Insurer "is entitled to a final declaratory judgment

---

[10]       Specifically, Ortiz agreed with the Insurer that if an insured settles an action without notifying or obtaining the consent of the insurer, coverage is precluded as a matter of law.

that the subject policy affords no coverage to Rodriguez for the initial *Ortiz v. Rodriguez* tort action because Rodriguez breached the provisions dealing with 'Duties in the Event of Occurrence, Offense, Claim or Suit' and 'Legal Action Against Us.'"

Ortiz, however, asks the Court not to address whether Rodriguez is an insured under the policy or whether any coverage provisions would bar coverage to Rodriguez for the *Ortiz v. Rodriguez* action. The Insurer, however, argues that all parties would benefit from a prompt resolution of all coverage questions.

## II.     Summary Judgment Standard and Legal Framework

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *See Allen*, 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether that evidence could reasonably sustain a jury verdict. *Celotex,* 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.

Further, while the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative, is not enough. *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

Under Florida law, the interpretation of insurance contracts is a question of law. *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 582 (Fla. 4th DCA 2000). Insurance contracts are construed according to their plain meaning. *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (citations omitted). To the extent there is an ambiguity in the insurance contract, courts should construe the ambiguity in favor of coverage. *Id*. An ambiguity exists if there are two possible interpretations to the

insurance contract-one providing coverage and the other excluding coverage. *Id.* But the ambiguity in the contract must be real, and courts should not rewrite the contracts or add meaning that is not present. *Id.*

### III.   Analysis

#### A.   The policy does not cover injuries suffered by employees as a result of actions by co-employees.

As noted above, under Coverages A and B, the policy covers claims that "*the insured* becomes legally obligated to pay" because of "bodily injury," "property damage," and "personal and advertising injury." As such, if a non-insured party becomes legally obligated to pay a certain sum, the insurance policy does not cover that obligation. Accordingly, whether Rodriguez, the person legally obligated to pay Ortiz, is an insured is a threshold question.

Although Ortiz has conceded that the Insurer is entitled to summary judgment because Rodriguez failed to comply with the insurance policy's notice provision, the Court also finds that the Insurer would not have had an obligation to cover any sums that Rodriguez became obligated to pay as a result of Ortiz's injuries because Rodriguez was not an "insured" as defined under the policy. This is because, as set forth above, under the policy, employees are insureds only "for acts within the scope of their employment" or "while performing duties related to the conduct" of Schratter Foods' business. *See* Policy (D.E. #41-2) at 2(a). But an employee is not an insured with regard to injuries suffered by a co-employee "while in the course of his [ ] employment" or while he is "performing duties related to the conduct" of Schratter Foods' business. *Id.* at 2(a)(1)(a).

While there is a factual dispute about whether Rodriguez was acting within the scope of his employment or simply playing a prank on Ortiz, the dispute is not material to the determination of whether Rodriguez is an insured. Under either scenario, Rodriguez is not an insured. First, if Rodriguez was engaged in horseplay, then he is not a covered insured because he was neither engaged in acts within the scope of his employment nor performing duties related to the conduct of Schratter Foods' business.[11]   On the other hand, even if Rodriguez was not

---

[11]   In determining whether employees are acting within the scope of their work while playing pranks on co-employees, several Florida courts have decided that such acts (though momentary deviations from employment) are outside of the employees' scope of work. *See, e.g., Benn v. Fla. E. Coast Ry. Co.*, No. 97-4403-CIV, 1999 WL 816811, *7-8 (S.D. Fla. July 21, 1999) (no employer-liability for pranks unless injured employee shows, among other things, that

engaged in horseplay and was either performing acts within the scope of his employment or performing duties related to the conduct of Schratter Food's business, he is not an insured by virtue of the co-employee's injury exclusion.  In other words, for Rodriguez to be an "insured," he must have caused injuries during the scope of his employment to someone other than his co-employee.

For this reason, the Insurer is not liable for any sums—under Coverages A or B—that Rodriguez becomes obligated to pay as a result of Ortiz's injuries.

The definition of "insured" works in tandem with the Employer's Liability Exclusion to broadly exclude coverage for "bodily injury" to employees.  The Employer's Liability Exclusion prevents Ortiz from recovering for his injuries because they occurred while he was engaged in performing duties related the Schratter Foods' business.  While Schratter Foods points to Floyd More's deposition testimony to argue that there is an issue of fact that precludes summary judgment, More's testimony indicates that he was not present when the forklift incident began.  Indeed, More's conclusion that Ortiz and Rodriguez were involved in horseplay is based on

---

the offensive conduct was "activated at least in part by a purpose to serve the master"); *Crowder v. Wolary*, 198 So. 9, 11 (Fla. 1940) (The dispositive question is whether the offending employee "when he did the wrong . . . acted within the scope of his authority while prosecuting the employer's business or had stepped aside from that business and thereby committed an individual wrong."  In this case, it was "illogical and unreasonable to assume" that the offending employee was acting within the scope of his authority when he pushed a gas station air hose into the injured employees rectum, "thereby inflating the [injured employee's] intestines and stomach."); *Bryant v. CSX Transp.*, 577 So. 2d 613, 615 (Fla. 1st DCA 1991) (offending employee was not acting "in the course and scope of his employment" when, as a practical joke, he threw a cherry bomb into a shack occupied by a fellow employee).  If Schratter Foods is not vicariously liable for a prankster-employee's acts, then the Insurer also is not liable when a prerequisite to liability is that the employees acts are "within the scope of their employment" or "while performing duties related to the conduct of" Schratter Foods' business.

In the workers' compensation context, Florida courts have held that injured employees may recover under the workers' compensation laws even if injury results after a momentary deviation from the employees' scope of work.  *See, e.g., Greathead v. Asplundh Tree Expert Co.*, 473 So. 2d 1380, 1382-83 (Fla. 1st DCA 1985) (setting forth four factors that are relevant to determining whether "an employee's 'horseplay' is substantial enough to preclude compensability").  The test described in *Greathead* evolved out of a concern that injured employees would be compensated for "[a]aberrations in machines," but not for "aberrations in fellow-employees."  *See Jean Fluet, Inc. v. Harrison*, 652 So. 2d 1209, 1212 (Fla. 1st DCA 1995) (citation omitted).  But this degree of lenity has not been extended beyond the workers' compensation area, and the rule described in *Benn*, *Crowder*, and *Bryant* remains intact.

speculation.  Speculative testimony is not admissible in evidence and, therefore, More's testimony regarding events that occurred outside his presence is not adequate to create a factual dispute that precludes summary judgment.  *See* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *Rowell v. Bellsouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) ("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form.").  In any event, for the reasons detailed above, if the Court accepted More's testimony that Ortiz and Rodriguez were involved in horseplay in the moments leading up to the forklift accident, then Rodriguez would not be an insured because he would have been acting outside of the scope of his employment.

There is an additional reason why there would be no coverage under the policy if the Court considered More's testimony.  The language of the Employer's Liability Exclusion is broad enough to preclude recovery.  That exclusion states that the insurance does not apply to bodily injury to an employee "*arising out of* and in the course of" employment or while performing duties related to Schratter Foods' business.  (emphasis supplied).  The Florida Supreme Court has held that courts should read "arising out of" very broadly.  *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 535-36, 39-40 (Fla. 2005) (and cases cited therein).  In *Taurus*, the Court held that an exclusion in a CGL policy[12] barred coverage of claims brought by municipalities against a gun manufacturer to "recover the cost of medical and other services incurred as a result of gun violence in their communities."  *Id.* at 530.  In other words, the *Taurus* Court held that the misuse of guns—that is, the use of guns for criminal purposes—was causally related to (albeit loosely) the insured's gun manufacturing activities. Under this broad view of the meaning of "arising out of," even injuries resulting from the misuse of company time—that is, from horseplay and tomfoolery—are causally related to the employees' employment.  Accordingly, the insurance policy does not extend to Ortiz's injury.

---

[12]     The exclusion in question in *Taurus* excluded coverage for "all bodily injury and property damage . . . arising out of your product."  *Id.* at 531.

### B.     The Workers' Compensation Exclusion precludes coverage.

Even if Rodriguez were an insured under the policy, any claim that he would have made to the Insurer for sums that he became legally obligated to pay as a result of Ortiz's injuries would have been excluded by the policy's exclusions.[13]

The Workers' Compensation Exclusion excludes coverage of Ortiz's injury.   The evidence indicates that Ortiz has already received over $270,000 in workers' compensation benefits for the injury he sustained as a result of the forklift accident, and the policy excludes coverage for "[a]ny obligation of the insured under a workers' compensation . . . law or any similar law."   Under Florida law, an employer is required to pay workers' compensation to an employee who "suffers an accidental compensable injury or death arising out of work performed in the course and the scope of employment."   Fla. Stat. § 440.09(1).   And, generally, under the workers' compensation law, an employee may not "double dip."   That is, where recovery under the workers' compensation law is possible, an injured employee may not receive compensation for the same injury from another source.[14]   *See* Fla. Stat. § 440.11(1).   Schratter Foods argues that through the *Ortiz v. Schratter Foods* lawsuit, Ortiz seeks to recover "damages for his bodily injury ***separate and apart*** from those provide under" the workers' compensation laws.   (D.E.

---

[13]     The Court discusses the Employer's Liability Exclusion in Section III.A of this Order.   The Employer's Liability Exclusion and Workers' Compensation Exclusion both apply to any coverage required under Coverage A of the policy.   The Insurer has not argued that any exclusion applies to coverage required under Coverage B of the policy.   Nonetheless, coverage is not required under Coverage B of the policy because Rodriguez is not an insured.   *See* Section III.A of this Order.

[14]     Under some limited circumstances, employees may seek and receive compensation for a workplace injury in addition to that available under the workers' compensation system.   Fla. Stat. § 440.11(1).   But that recovery would only be possible if the employer (a) had not secured a means of paying an employee the compensation due under Chapter 440 or (b) engaged in intentional misconduct.   *Id.*   Neither of these two bases for additional recovery from the employer has been shown or alleged.   In addition, an injured employee could only seek addition remuneration from a fellow employee if the tortfeasor-employee acted within "willful and wanton disregard," "unprovoked physical aggression," or "gross negligence."   *Id.*   But just because the tortfeasor-employee could face personal liability for a workplace injury does not mean that that liability would also attach to the employer or its insurer.   And, in any event, for purposes of the insurance policy at issue, the tortfeasor-employee would not be an insured because his acts, if they fit into the categories described in § 440.11(1), would not be within the scope of his employment or related to the conduct of Schratter Foods' business.   *See* Section III.A.

#47) (emphasis in original).  The policy does not cover damages for breach of contract or negligent misrepresentation.  Therefore, for the policy to even arguably cover the damages sought in the *Ortiz v. Schratter Foods* action, the damages must relate to bodily injury.  And these are precisely the damages covered under the workers' compensation laws.  Therefore, the workers' compensation exclusion precludes their recovery under the policy.

That these exclusions preclude coverage for Ortiz's injuries is not unexpected.  As one Florida court stated, "the only coverage intended, and for which the premium has been paid, is the liability of the insured to the public, as distinguished from liability to the insured's employees . . . ."  *Fla. Ins. Guar. Ass'n v. Revoredo*, 698 So. 2d 890, 892 (Fla. 3d DCA 1997).

### C.   The Insurer does not have an obligation to defend Schratter Foods in the *Ortiz v. Schratter Foods* action.

Even if Rodriguez were an insured under the policy and recovery for Ortiz's injuries was not excluded under the policy's exclusions, the Insurer would not have an obligation to defend Schratter Foods in the *Ortiz v. Schratter Foods* action.

To determine whether the Insurer has a duty to defend Schratter Foods in the *Ortiz v. Schratter Foods* action, the Court looks to the allegations contained within the four corners of the complaint in the underlying action.  *Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995).

The two counts within the four corners of the complaint in the *Ortiz v. Schratter Foods* action do not state a claim that the Insurer is obligated to defend under the policy.  The first count concerns Schratter Foods' failure to procure insurance as required by the forklift lease agreement.  The second count concerns Schratter Foods' failure to accurately advise Ortiz of its insurance policies.

Schratter Foods' contention that the Insurer must defend it in the *Ortiz v. Schratter Foods* action because the damages in that action partially or fully overlap with the damages that Ortiz sustained in the forklift accident fails as a matter of Florida law.  The Florida Supreme Court rejected a similar contention in *Humana Worker's Comp. Servs. v. Home Emergency Servs., Inc.*, 824 So. 2d 778, 780 (Fla. 2003).  In that case, an employee was injured when a ladder he was on collapsed.  The employee asked his employer to keep the ladder so that he could pursue a claim against its manufacturer, but the employer disposed of the ladder and thereby destroyed the evidence that the employee would have used against the ladder's manufacturer.  The employee

brought suit against the employer for spoliation, and the employer sought coverage from its insurer arguing that the employee would only prevail in his spoliation claim if he proved the viability of his underlying claim for bodily injury.  Accordingly, the employer argued "if [the employee] prevails in the spoliation action it will be 'because of' the underlying bodily injury, coupled with the loss of the ladder."  *Id.*  The Court held that the insurance policy did not cover the spoliation claim because the spoliation claim sought compensation for the "loss of a probable expectancy of recovery in the underlying suit," and "not for the bodily injury he sustained in falling from the ladder."  *Id.* at 781.

Similarly, in the *Ortiz v. Schratter Foods* action, Ortiz seeks recovery of damages that he sustained as a result of Schratter Foods' failure to procure the requisite insurance under the forklift lease agreement and its misinformation about the insurance policies in effect.  In other words, if Ortiz recovers damages in the *Ortiz v. Schratter Foods* lawsuit, it will be because Schratter Foods failed to procure the forklift insurance and/or because it failed to accurately advise Ortiz of the available insurance coverage.  The damages recovered will not be for the bodily injury sustained in the forklift accident.

Schratter Foods' argument that there is a potential for coverage simply because the Insurer has defended Schratter Foods in the *Ortiz v. Schratter Foods* action is unmeritorious. The Insurer specifically reserved its rights to seek a declaration of its coverage obligations before commencing its defense of Schratter Foods, and Schratter Foods acknowledged that it understood the terms of the Insurer's defense when it countersigned the Insurer's November 21, 2008 letter informing Schratter Foods that the Insurer's defense of the *Ortiz v. Schratter Foods* action was subject to a reservation of rights.

Accordingly, the Insurer is entitled to a declaration that it is not required to defend Schratter Foods in the *Ortiz v. Schratter Foods* action.

### D.   Schratter Foods' failure to notify the Insurer of the *Ortiz v. Rodriguez* action precludes coverage.

Finally, notwithstanding all of the reasons set forth above, the Insurer does not have an obligation to pay the damages agreed to in the consent judgment because, contrary to its obligations under the policy, Schratter Foods failed to notify the Insurer of the *Ortiz v. Rodriguez* action.

An insurer is freed of its obligation to indemnify an insured where the insured fails to give the insurer notice of a suit that potentially implicates the insurance policy. *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 695 So. 2d 475, 477 (Fla. 3d DCA 1997).[15]

In this case, the uncontroverted evidence demonstrates that in March 2007, when Gitlin (at the latest) first received notice of the *Ortiz v. Rodriguez* action, Gitlin did not inform the Insurer of the lawsuit because he determined that the Insurer's policy would not cover Ortiz's claims arising from the forklift accident. In December 2007, months after Schratter Foods failed to notify the Insurer of the lawsuit, Ortiz and Rodriguez entered into the consent judgment that awarded Ortiz $6.125 million in damages. Schratter Foods' failure to notify the Insurer of the lawsuit denied the Insurer the opportunity to decide for itself whether the policy covered the injuries Ortiz sustained in the forklift accident, settle the claims, and/or defend Rodriguez (if necessary) in the *Ortiz v. Rodriguez* action.

Schratter Foods' argument that its duty to notify was not triggered because the "Risk Manger" did not receive notice of the lawsuit is unavailing. Gitlin's deposition is clear that he handles "claims and risks" similar to those implicated in the *Ortiz v. Rodriguez* action for Schratter Foods. In fact, he made the determination on behalf of Schratter Foods that the *Ortiz v. Rodriguez* action was not covered by the policy. In its opposition to the Insurer's summary judgment motion, Schratter Foods submitted Kulka's affidavit. Notably, in her affidavit, Kulka

---

[15]   Under some circumstances, where the insured delayed in notifying the insurer of a potential claim, the insured must rebut the presumption that the delay prejudiced the insurer. *See Philadelphia Indem. Ins. Co. v. Kohne*, 294 F.Supp.2d 1319, 1324 (M.D. Fla. 2003) citing *Ramos v. Northwestern Mut. Ins. Co.*, 336 So. 2d 71, 75 (Fla 1976); *Tiedtke v. Fid. & Cas. Co. of New York*, 222 So. 2d 206, 209 (Fla. 1969). A notable difference between those cases and this case is that in this case Schratter Foods made no effort to notify the Insurer of the *Ortiz v. Rodriguez* action. But even if the rebuttable presumption applied, Schratter Foods has not met its burden to overcome it. The most Schratter Foods offers is an argument that it is challenging the validity of the consent judgment and therefore the prejudice flowing from the $6.125 million consent judgment is uncertain. However, because Schratter Foods failed to notify the Insurer of the *Ortiz v. Rodriguez* action, the Insurer faces $6.125 million in exposure where early investigation and an acceptance of Ortiz's May 18, 2007 settlement offer could have capped damages at $250,000. Schratter Foods' arguments regarding the reasonableness of the consent judgment leave the Insurer with the *possibility* of paying a lower amount after much litigation where, at the outset, the Insurer could have enjoyed the likelihood of resolving the case for at most $250,000 if Schratter Foods had notified it of the *Ortiz v. Rodriguez* action.

does not state that she is Schratter Foods' Risk Manager.  Moreover, Schratter Foods does not show that Gitlin was not fulfilling the role of Risk Manager when he received the claim and made his determination of no coverage.  Nor has Schratter Foods explained why, if Gitlin was not fulfilling the role of Risk Manager, he did not pass on the claim to Kulka.  Accordingly, that affidavit does not establish a factual dispute sufficient to defeat summary judgment.

Because Schratter Foods failed to notify the Insurer of the *Ortiz v. Rodriguez*, the Insurer is not required to defend Schratter Foods in any action that seeks to recover the damages to which Ortiz and Rodriguez agreed in their consent judgment.

### IV.   Conclusion

For all of the reasons set forth above, the Court determines that (1) the Insurer does not have a duty to defend Schratter Foods in the *Ortiz v. Schratter Foods* lawsuit and (2) the Insurer does not have a duty to indemnify Schratter Foods or Rodriguez under the applicable policy for the injuries that Ortiz suffered as a result of the forklift accident.

The Court will enter final judgment and reserves jurisdiction with regard to any appropriate motion for fees and costs.

DONE and ORDERED in Chambers, Miami Florida, November 6, 2009.

Paul C. Huck
United States District Judge

**Copies furnished to:**
All counsel of record.